IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,          :     CIVIL ACTION
                                   :     NO. 11-7316
          Plaintiff,               :
                                   :
     v.                            :
                                   :
BAKER FUNERAL HOME, LTD., et al.,  :
                                   :
          Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        July 13, 2016


**Table of Contents**

I.   FINDINGS OF FACT......................................... 5
II.  CONCLUSIONS OF LAW...................................... 34
     A.   Civil Contempt.................................... 35
          1.   Legal Standard............................... 36
          2.   The Amended Permanent Injunction and Consent
               Receivership Orders are Valid Orders as to Which
               the Bakers Had Knowledge...................... 38
          3.   Mr. and Mrs. Baker and Baker Funeral Home, PC,
               Failed to Comply with the Court's Prior
               Orders........................................ 40
          4.   Defenses Raised by Mr. and Mrs. Baker and Baker
               Funeral Home, PC.............................. 46
               a.   Substantial Compliance............... 47
               b.   Impossibility........................ 51
                    i.   Mrs. Baker's Attempts to
                         Relinquish Ownership of Baker
                         Funeral Home, PC................ 52
                    ii.  IRS Collection Efforts.......... 56
                    iii. Mrs. Baker's Conversion........ 57
     B.   Expanding Scope of the Injunction................. 60

1.    Legal Standard................................. 60

2.    Likelihood of Future Compliance with Federal Tax Obligations.................................... 63

III. CONCLUSION............................................. 69

Baker Funeral Home, through its original identity as Baker Funeral Home, Ltd., and later as Baker Funeral Home, PC, has been in the business of providing funeral and cremation services since 1975. Since 1996, Vince Baker has managed the business, which he inherited when his father passed away. More recently, Mr. Baker's wife, Marcia Baker, assumed much of the responsibility for the business's financial management, while Mr. Baker remained responsible for preparing human remains and directing funerals.

For over four decades, Baker Funeral Home has served several generations of families in its North Philadelphia neighborhood. Unfortunately, during much of this time, Baker Funeral Home and its owners have successfully evaded their federal tax obligations by repeatedly failing to file tax returns and pay taxes owed to the Internal Revenue Service ("IRS"). This defiance by Mr. and Mrs. Baker has led the IRS to a cat and mouse pursuit, in which, so far, Mr. and Mrs. Baker have escaped judgment.

The United States ("the Government") originally brought this civil action against Defendants Baker Funeral Home,

Ltd., and Mr. Baker for failure to file timely federal employment tax returns and pay tax liabilities, in violation of 26 U.S.C. §§ 3102, 3111, 3301, 3402, 6011(a), and 6041. See Compl. ¶¶ 1-3, ECF No. 1. On April 12, 2012, the Court granted by consent a Permanent Injunction against Baker Funeral Home, Ltd., and Mr. Baker that, among other things, precluded the funeral home from committing further violations of the Internal Revenue Code ("IRC"). ECF No. 10. After the funeral home remained delinquent on its past and then-present federal tax obligations, the Court entered an Amended Permanent Injunction. ECF No. 33. Still later, faced with continuing violations by the funeral home and Mr. Baker, the Court issued by consent an order appointing a Receiver to oversee the preparation of required federal tax returns and assist the funeral home in making required federal tax payments. Even under the Receivership, the funeral home failed to meet its federal tax obligations.

Before the Court is the Government's third motion to hold Defendants in contempt and modify the scope of the Amended Permanent Injunction to require the winding down of Baker Funeral Home, PC, and bar Mr. Baker and Mrs. Baker from forming another funeral home business. ECF No. 51. The named Defendants have opposed the motion. Opposition briefs have also been filed by interested parties Baker Funeral Home, PC, and Mrs. Baker, as

the owner of Baker Funeral Home, PC. The Court held an evidentiary hearing on June 16, 2016.

As is more fully explained below, the Court will consider the issues raised in the Government's motion in two steps: First, the Court will determine whether Defendants, Mrs. Baker, and Baker Funeral Home, PC, are in contempt of the Court's prior orders--an inquiry which requires the Court to look backwards to those individuals' and entities' past conduct. And, second, the Court will determine whether to expand the scope of the Amended Permanent Injunction, an inquiry that is forward-looking and requires the Court to assess the likelihood of Mr. and Mrs. Baker's future compliance with the IRC. This Memorandum constitutes the Court's findings of fact and conclusions of law as to both of these issues.

For the reasons that follow, the Court finds that Defendants, as well as Mrs. Baker and Baker Funeral Home, PC, are in civil contempt of the Amended Permanent Injunction, ECF No. 33, and Consent Order for Appointment of Receiver and Payments of Attorney's Fees, ECF No. 40, and that they are unlikely to meet their past, present, and future federal tax obligations. The Court will address the appropriate remedy to be awarded to the Government, as well as the terms of the expanded injunction, in a subsequent proceeding.

4

## I.   FINDINGS OF FACT

Baker Funeral Home's history of federal tax noncompliance is lengthy, somewhat complicated, and ultimately astonishing. The original business entity, Baker Funeral Home, Ltd., failed to file timely employment tax returns and pay its employment tax liabilities beginning in 1995, when Mr. Baker's father, Wendell Baker, was still running the business. Lewis Decl. ¶ 9, July 20, 2011, ECF No. 2-2.

Beginning in 1999, the IRS devoted considerable time and resources to bringing Baker Funeral Home, Ltd., into tax compliance through administrative means. Permanent Inj. Order ¶ 7, ECF No. 10. The funeral home's pre-2002 liabilities were satisfied through enforced collection action. Lewis Decl. ¶ 11, July 20, 2011. Eventually, however, the IRS's efforts proved unsuccessful and Baker Funeral Home's liabilities continued to accrue. Permanent Inj. Order ¶ 8. For instance, IRS revenue officers repeatedly contacted Baker Funeral Home, Ltd., and Mr. Baker to request tax returns and payments, to no avail. Lewis Decl. ¶ 17, July 20, 2011. The IRS also issued levies to seize Baker Funeral Home, Ltd.'s accounts receivable and other accounts but obtained only a small amount of money through such levies due, at least in part, to Mr. Baker's practice of switching the business's bank accounts after the IRS issued the levies. Id. ¶ 19. On several occasions, the IRS attempted to

seize Baker Funeral Home, Ltd.'s business assets and real property, but Mr. Baker made the requisite minimal payments at the eleventh hour to avoid seizure or to exercise a right of redemption. Id. ¶¶ 20, 24.

On November 25, 2011, the Government brought the instant suit against Baker Funeral Home, Ltd., and Mr. Baker for failure to file timely federal employment tax returns and pay tax liabilities beginning with the fourth quarter of 2002. See Compl. ¶¶ 1-3; Lewis Decl. ¶ 13, July 20, 2011. As of August 1, 2011, Baker Funeral Home, Ltd., owed approximately $800,000 in unpaid employment taxes, including penalties and interest that had accrued since 2002. Compl. ¶ 1.

In the Complaint, the Government sought to obtain a monetary judgment against Baker Funeral Home, Ltd., for past due tax liabilities and an injunction mandating the business and Mr. Baker to file timely tax returns and make timely tax payments. See generally Compl. The matter was originally assigned to the Honorable Ronald L. Buckwalter.[1]

The parties consented to the entry of a Permanent Injunction and judgment of $813,657 against Baker Funeral Home, Ltd., which the Court entered on April 12, 2012. ECF Nos. 8, 10, 13, 15. The Permanent Injunction required Baker Funeral Home,

---

[1]     Judge Buckwalter retired from active service in January 2016. On January 25, 2015, this case was reassigned to the undersigned, the Honorable Eduardo C. Robreno. ECF No. 48.

Ltd., and Mr. Baker to, inter alia, withhold and pay to the IRS all required employment and unemployment taxes; timely file Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) and Form 941 (Employer's Quarterly Federal Tax Return) returns going forward; make timely and full payroll tax deposits; and notify the IRS if Mr. Baker began operating a new business enterprise. Permanent Inj. Order ¶ 19.

Baker Funeral Home, Ltd., and Mr. Baker violated the Permanent Injunction almost immediately. First, Baker Funeral Home, Ltd., failed to file timely tax returns, timely pay its taxes, and make timely bi-weekly payroll tax deposits. Lewis Decl. ¶¶ 5-12, June 26, 2012, ECF No. 16-2.

Second, and more egregiously, in March 2012, Mr. Baker and his wife, Mrs. Baker, transferred all of Baker Funeral Home, Ltd.'s business assets and operations to Baker Funeral Home, PC, an entity formed in May 2011 and owned solely by Mrs. Baker. Stipulation of Undisputed Facts Related to Baker Funeral Home, Ltd. ¶ 3, ECF No. 24. Accordingly, Baker Funeral Home, Ltd., is now defunct, at least in its capacity as a taxpayer incurring additional tax obligations.[2]

---

[2]     Business entity details provided by the Pennsylvania Department of State's website show that Baker Funeral Home, PC, was formed in May 2011 and has a business address at Mr. and Mrs. Baker's residence. Pa. Dep't of State, Business Entity Details: Baker Funeral Home, PC, https://www.corporations.pa.gov/search/corpsearch (last visited July 13, 2016) (use search

During this litigation, Mr. Baker and Mrs. Baker have readily admitted that Baker Funeral Home, PC, was created as a "new start" to avoid IRS collection and access new lines of credit. Contempt Hr'g Tr. 5:24-16:12, Oct. 15, 2012, ECF No. 29; Evid. Hr'g Tr. 115:14-23, June 15, 2016, ECF No. 79. Defendants later stipulated that they violated the Permanent Injunction's terms by failing to inform the Government of the creation of Baker Funeral Home, PC, because the order required them to notify the IRS within ten business days if they or their representative, agent, or employee, or anyone in active concert or participation with them began to operate a new business enterprise. Stipulation of Undisputed Facts Related to Baker Funeral Home, Ltd. ¶ 3.

And Mr. and Mrs. Baker intended Baker Funeral Home, PC, to be a fresh start in other ways. Mrs. Baker was not simply a nominal owner of Baker Funeral Home, PC. Rather, for the first

_____

function to search for Baker Funeral Home, PC's listing). The website does not list the officers of Baker Funeral Home, PC, and the parties have not provided the Court with any evidence in the form of official corporate documents to support the claim that Mrs. Baker is the sole owner.

Even though Mr. and Mrs. Baker maintain that Baker Funeral Home, Ltd., is no longer a going concern, Baker Funeral Home's license as a funeral facility by the Commonwealth of Pennsylvania remains in Baker Funeral Home, Ltd.'s name. Pa. Dep't of State, License Information: Baker Funeral Home Ltd., http://http://www.licensepa.state.pa.us/Search.aspx?facility=Y (last visited July 13, 2016) (select "Funeral Directors" as "Profession" and type "Baker Funeral Home" into "Facility Name" field, then click "Search").

time, she took on an active role in managing the funeral home
business. Marcia Baker's Resp. Gov't's 3d Mot. Contempt at 3,
ECF No. 70 (admitting that Mrs. Baker "took an active role in
managing Baker PC for years in an attempt to get it into
compliance with the Court's orders and 'back-on-track'").
Although Mr. Baker remained the funeral supervisor[3] for the new
business entity, he has no ownership interest Baker Funeral

---

[3]        Pennsylvania law requires that every licensed funeral
facility have a permanent licensed "funeral supervisor" on staff
who is a "licensed funeral director" and who "shall devote full
time to the business which he is supervising and may not conduct
an establishment of his own or supervise another funeral
establishment." 49 Pa. Code § 13.144. In turn, Pennsylvania law
requires all persons practicing as a "funeral director" within
the Commonwealth to be licensed, 63 Pa. Cons. Stat. § 479.3, and
describes the role of "funeral director" as

        any person engaged in . . . the care and disposition
        of the human dead, or in the practice of disinfecting
        and preparing by embalming the human dead for the
        funeral service, burial or cremation, or the
        supervising of the burial, transportation or disposal
        of deceased human bodies, or in the practice of
        funeral directing or embalming as presently known.

63 Pa. Cons. Stat. § 479.2(1). The term also includes "a person
who makes arrangements for funeral service and who sells funeral
merchandise to the public incidental to such service or who
makes financial arrangements for the rendering of such services
and the sale of such merchandise." Id.

        Review of the Pennsylvania Department of State's
records shows that Mr. Baker is currently licensed as both a
funeral director and funeral supervisor. Pa. Dep't of State,
License Verification: Vince N Baker, http://www.licensepa.state.
pa.us (last visited July 13, 2016) (select "Funeral Directors"
as "Profession" and type Vince Baker into name fields, then
click "Search").

Home, PC, and is a mere employee of the business. Evid. Hr'g Tr. at 115:8-13.

On June 28, 2012, the Government filed its first motion to hold Defendants in contempt for noncompliance with the Permanent Injunction. ECF No. 16. Later, on September 21, 2012, the Government moved to modify the Permanent Injunction to include Baker Funeral Home, PC, and any of Baker Funeral Home, Ltd.'s other successors, nominees, or alter egos. ECF No. 21. After a hearing, ECF No. 29, the Court granted both motions, ECF Nos. 32, 33.

In his order granting the Government's motion for contempt, Judge Buckwalter found clear and convincing evidence that Baker Funeral Home, PC, was a successor to Baker Funeral Home, Ltd., and awarded the Government $2,000 in attorneys' fees. ECF No. 32. Although the Court denied the Government's request for more substantial sanctions, it also rejected the Defendants' contention that their "misconduct [wa]s insignificant." Id. at 2. Instead, Judge Buckwalter explained,

> [t]he ignoring of a clear and concise order in this case cannot be simply brushed aside. The Bakers who testified in court struck me as wanting to get their business in order and were making honest steps to do so. Thus, although a sanction is in order, it will for this first violation be relatively modest.

Id. In addition, Judge Buckwalter issued an Amended Permanent Injunction, expanding the scope of the injunction to include

Baker Funeral Home, PC, and "any successors, nominees, or alter
egos of Baker Ltd. or Vince Baker, or any persons or entities
acting in concert with them."[4] ECF No. 33 ¶ A. The Amended
Permanent Injunction required the named individuals and entities
to, among other things, "withhold and pay over to the [IRS] all
employment and unemployment taxes required by law," id. at ¶ B;
"timely make the federal tax deposits of (1) Form 941 payroll
taxes (income and FICA taxes withheld from the employees' wages
and the employer's share of FICA taxes), and (2) Form 940
unemployment (FUTA) tax, in an appropriate federal depository
bank in accordance with federal deposit regulations," id. at
¶ C; and "timely file all federal employment (Form 941) and
unemployment (Form 940) tax returns and pay any balances due on
those returns upon filing," id. at ¶ D. The Amended Permanent
Injunction also barred the named individuals and entities from
"paying other creditors and transferring, disbursing or
assigning any money, property or assets until the required

---

[4]     While the parties have never formally amended the
caption in this matter to replace "Baker Funeral Home, Ltd.,"
with "Baker Funeral Home, PC," as a defendant, the parties
identify "Baker Funeral Home, PC," as a defendant in their
filings made after the Amended Permanent Injunction issued. See,
e.g., Defs.' J. Resp. Gov't's 3d Mot. Contempt at 1, ECF No. 52.
At the evidentiary hearing on the instant motion for contempt,
IRS revenue officer Marvena Lewis testified that all of the
assets of Baker Funeral Home, Ltd., have been liquidated, it is
no longer a going concern, and the IRS is unable to collect
against it. Evid. Hr'g Tr. at 89:7-19, 90:9-13.

federal tax deposits have been fully made for the given tax
period." Id. ¶ E.

Less than a year later, in July 2014, the Government
filed its second motion for contempt. ECF No. 34. In its motion,
the Government submitted that Baker Funeral Home, PC, had failed
to timely file seven out of twelve tax returns and incurred more
than $50,000 in additional unpaid taxes, penalties, and
interest. Lewis Decl. ¶¶ 6-9, July 11, 2014, ECF No. 34-3.
Moreover, the Government asserted that the funeral home had
indicated on tax forms filed with the Government that no
employee payroll was made during certain tax periods, whereas
bank records showed cashed payroll checks issued to employees
during the same tax periods. Yang-Green Decl. ¶¶ 4-7, ECF No.
34-2. Upon the filing of this motion, Judge Buckwalter issued a
rule to show cause why Baker Funeral Home, PC, and Mr. Baker
should not be held in contempt for disobeying the Amended
Permanent Injunction. ECF No. 35.

Thereafter, the parties stipulated to a Consent Order
for Appointment of Receiver and Payment of Attorney's Fees
(hereinafter, "Consent Receivership Order"), "which resolve[d]
all issues under the United States' Motion for Contempt and
Order to Show Cause (Dkt. No. 34) and the Rule to Show Cause
(Dkt. No. 35), relating to the Respondents' violation of the
Amended Injunction (Dkt. No. 33)." ECF No. 40 at 1. The Consent

Receivership Order was executed by Phyllis Horn Epstein,
Esquire, as counsel for Mr. Baker and Baker Funeral Home, PC;
Mr. Baker, individually and as officer of Baker Funeral Home,
PC; and Mrs. Baker, as officer of Baker Funeral Home, PC.[5] Id. at
10. The Court entered the Consent Receivership Order on October
6, 2014. Id. at 9.

In the Consent Receivership Order, Baker Funeral Home,
PC, and Mr. Baker agreed to pay the Government's attorneys' fees
in connection with the contempt proceedings in the amount of
$4,480.00. Id. at ¶ 1. The Consent Receivership Order also
appointed Wayne D. Geisser of Smart Devine & Company, LLC, as
the Receiver and set forth his duties. Id. ¶¶ 2-5. In the event
Baker Funeral Home, PC, failed to timely file any of its
required federal tax return or make required tax payments, the
Receiver's duties included the following:

- "[T]he Receiver shall oversee or directly perform the
  preparation and filing of those returns, and
  shall direct the appropriate officer of Baker PC to
  review and sign such returns for filing," id. ¶ 3;

- "[T]he Receiver shall direct Baker PC's available
  funds to pay those taxes to the IRS," id. ¶ 4;

- "The Receiver shall have access to Baker PC's Tax
  Account, a checking account set up for the sole

---

[5]     Interestingly, Mr. Baker now seems to contend that he
is not an officer of Baker Funeral Home, PC, and that Mrs. Baker
is the sole owner and officer of that company. Evid. Hr'g Tr. at
115:8-13. As explained supra note 2, records for Baker Funeral
Home, PC, publicly available through the Pennsylvania Department
of State website do not list its officers.

purpose of making federal tax payments, and shall be authorized to sign checks from that account for the sole and specific purpose of paying Baker PC's federal taxes," id. ¶ 4(a); and

- "The Receiver shall have access to Baker PC's general account(s), bank account(s) that hold the remainder of Baker PC's funds, and shall be authorized to transfer funds from the general account(s) to the Tax Account for the sole and specific purpose of making Baker PC's federal tax payments," id. ¶ 4(b).

The order further provided that the Receiver shall have access to and control over Baker Funeral Home, PC's financial records, keys and security codes, safe box, and mail and other correspondence and may implement such accounting and control procedures necessary to discharge his duties. Id. ¶¶ 6-12.

The Consent Receivership Order also required "Baker PC, Vince Baker, Marcia Baker, and any other officers, shareholders, employees, contractors and other agents of Baker PC" to "cooperate with the Receiver" and enjoined them "from interfering in any manner with the discharge of the Receiver's duties and exercising his authorities set forth in th[e Consent] Order." Id. ¶ 16. If any of these entities or individuals interfered with the Receiver's performance of his duties, the Receiver was to notify Government counsel and, if necessary, the Court. Id. ¶ 17.

The Consent Receivership Order contemplated that the Receivership would last two years and required the Receiver to submit reports to the Court at the end of Year 1 and Year 2

14

regarding Baker Funeral Home, PC's compliance with the Amended Permanent Injunction. Id. ¶ 19. The order stated that the Receiver's compensation would be $300 per hour and that all compensation and expenses should be "reasonable." Id. ¶¶ 24, 28. The Receiver was to make written applications to the Court for his compensation "at least once every 6 months," id. ¶ 26, although the order also set forth a procedure by which the Receiver could request interim payments, id. ¶ 27.

On November 30, 2015, the Receiver submitted his annual report for the first year of the Receivership. ECF No. 43-1. In the report, the Receiver identified a number of deficiencies on the part of Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, including:

- Mr. and Mrs. Baker's failure to provide requested documents and information on time and without repeated requests, id. at 3;

- Mr. and Mrs. Baker's failure to report any compensation paid to themselves, raising questions as to how they pay their living expenses, id. at 3 n.11;

- Baker Funeral Home, PC's failure to make payments toward pre-Receivership tax liabilities, which totaled $83,033.38 at the time of the Receiver's report, id. at 3-4;

- Mr. and Mrs. Baker's failure to provide complete accounting records for 2014 and 2015 through the QuickBooks system, <u>id.</u> at 4;

- Mr. and Mrs. Baker's failure to secure bookkeeping/ accounting support for Baker Funeral Home, PC, to prepare accurate accounting records and therefore accurate tax returns, <u>id.</u>;

- Mr. and Mrs. Baker's failure to provide a list of all funerals and cremation services for 2015, <u>id.</u>;

- Mr. and Mrs. Baker's use of payroll bank accounts to pay non-payroll and personal expenses, <u>id.</u> at 7;

- Mr. and Mrs. Baker's use of seven different bank accounts for the funeral home's operations and juggling of cash to pay bills, <u>id.</u>;

- Mr. Baker's opening of an additional bank account without informing the Receiver and failing to provide statements as to that account, <u>id.</u>;

- Mr. and Mrs. Baker's failure to provide a list of pre-need (i.e., prepaid) funerals and locations of associated funds, <u>id.</u> at 8;

- Mr. and Mrs. Baker's failure to maintain a systematic record of accounts receivable or maintain a system of collecting outstanding accounts receivable, <u>id.</u>;

16

- Mr. and Mrs. Baker's failure to timely file Baker Funeral Home, PC's corporate income tax return (Form 1120S), id.;[6] and

- Mr. and Mrs. Baker's failure to pay the Receiver's fees in accordance with terms of the Court's Order, id.

Based on these deficiencies, the Receiver concluded that Mr. and Mrs. Baker and Baker Funeral Home, PC, "while perhaps technically compliant with the 941 filings[,] [are] in violation of the Orders by [their] untimely filing of [the] [F]orm 1120S and pattern non-cooperation," as well as their failure to make "any progress to address prior liabilities, which by virtue of additional penalties and interest continue to grow." Id. at 10-11. Reasoning that "the Receivership is not effective for its intended purpose of bringing [Baker Funeral Home] into full tax compliance," the Receiver recommended termination of the Receivership. Id. at 10. The Receiver also noted that Baker Funeral Home is "awash in unpaid taxes, is undercapitalized and . . . is not in a position to obtain an inflow of capital," and that the perhaps the only way for the business to satisfy its obligations to creditors and tax

---

[6]      The Receiver reported that the 2014 Form 1120S was filed on October 28, 2015--months after the March 15, 2015, due date and September 15, 2015, extension deadline.

authorities is to sell its real estate, which is located on Temple University's campus and may be quite valuable. Id.

Following a brief termination of the Receivership,[7] Judge Buckwalter reinstituted it and ordered the parties to brief two questions: (1) whether Defendants should be held in contempt of the Court's prior orders (including the Permanent Injunction, Amended Permanent Injunction, and/or Consent Receivership Order); and (2) whether the scope of the Receivership should be modified to grant the Receiver authority to wind down Baker Funeral Home, PC; Baker Funeral Home, Ltd.; and any other business entities owned or controlled by Defendants. ECF No. 47. On January 25, 2016, the matter was reassigned to the undersigned. See supra note 1.

On April 4, 2016, the Government filed its Third Motion for Contempt. ECF No. 51. Baker Funeral Home, Ltd.; Baker Funeral Home, PC; Mr. Baker; and Mrs. Baker submitted a joint response thereto. ECF No. 52. The Government also submitted a

---

[7] Judge Buckwalter terminated the Receivership and closed the case three days after the Receiver's first annual report was filed, apparently based on the Receiver's recommendation that continuing the Receivership would be futile, even though the Consent Receivership Order contemplated a two-year receivership. ECF No. 45. Thereafter, the Government moved for reconsideration of the order terminating the receivership. ECF No. 46. Judge Buckwalter then reinstated the Receivership and reopened the case on January 5, 2016. ECF No. 47.

reply brief.[8] ECF No. 59. The Court scheduled a hearing for April 28, 2016. ECF No. 54.

On April 25, 2016--just three days before the hearing--Arnold C. Joseph, Esquire, entered his appearance for Mr. Baker and Baker Funeral Home, Ltd. ECF No. 55. On the same day, Ms. Epstein filed a motion for leave to withdraw as counsel for Baker Funeral Home, Ltd.; Baker Funeral Home, PC; and Mr. Baker. ECF No. 57. And still on the same day, Mr. Joseph filed a motion to continue the April 28 hearing. ECF No. 56. By Order dated April 25, 2016, the Court denied the motion to continue the hearing and ordered that it would hear Ms. Epstein's motion to withdraw on the same date and time. ECF No. 60.

At the April 28 hearing, the Court heard from Ms. Epstein as to the conflict of interest requiring her to withdraw. In addition, the Government presented additional information in support of its Third Motion for Contempt, and the Court briefly questioned the Receiver about his annual report and the extent of Mr. Baker, Mrs. Baker, and their business's noncompliance. As a result of the hearing, the Court issued two Orders.

---

[8]      The Government filed its reply brief on the docket without requesting leave of Court to do so, in violation of this Court's procedures. See Outline of Pretrial and Trial Procedures Before Judge Eduardo C. Robreno ¶ II.C.2 (instructing that reply and surreply briefs "shall not be filed for motions of any nature without prior leave of the Court").

First, the Court ordered that Ms. Epstein's motion for leave to withdraw as counsel was taken under advisement. ECF No. 63. The Court recognized that there appeared to be two sets of interests among the parties on the defense side: (1) Mr. Baker and Baker Funeral Home, Ltd.; and (2) Mrs. Baker and Baker Funeral Home, PC. Id. at 1 n.1. Because a conflict of interest might exist between these two groups, the Court ordered that each group be represented by separate counsel going forward. Id. Mr. Joseph had entered an appearance on behalf of Mr. Baker and Baker Funeral Home, Ltd., but Mrs. Baker and Baker Funeral Home, PC, needed additional time to retain new counsel. Id. For that reason, the Court continued the evidentiary hearing on the Government's contempt motion for thirty days. The Court further ordered Ms. Epstein to help facilitate the transition of this case to new counsel and stated that it would rule on her motion to withdraw at the evidentiary hearing. Id.

Second, the Court issued a Scheduling Order. ECF No. 64. In that Order, the Court set deadlines for Mr. Baker and Baker Funeral Home, Ltd., and Mrs. Baker and Baker Funeral Home, PC, to file supplemental briefs in opposition to the Government's motion. Id. at ¶¶ 1, 4. In addition, the Court asked the Government to file a supplemental brief addressing, among other things, whether any of the interested parties who have participated in this matter, namely Mrs. Baker and Baker

20

Funeral Home, PC, should be formally named as a defendant. Id. at ¶ 2. Further, the Court ordered the Government to file a liquidation plan "outlining its plans for liquidating Baker Funeral Home, Ltd., and/or Baker Funeral Home, PC, including the prospective sale of the real property located at 2008 N. Broad Street, Philadelphia, Pennsylvania, as well as its equipment and other contents." Id. at ¶ 6. Finally, the Court scheduled the evidentiary hearing for June 15, 2016. Id. at ¶ 7.

Thereafter, Mrs. Baker and Baker Funeral Home, PC, retained new counsel, Ann E. Querns, Esquire, and Jed M. Silversmith, Esquire. All parties submitted supplemental briefs. ECF Nos. 65, 68, 70, 72. In addition, the Government filed a proposed Liquidation Plan, ECF No. 69, to which the Receiver objected in part, based on his position in the priority of creditors, seeking to preserve his fee of over $20,000. ECF No. 71.

The Court held an evidentiary hearing on June 15, 2016. ECF No. 73. At the hearing, the Court granted Ms. Epstein's motion to withdraw. Evid. Hr'g Tr. at 6:2-10. Thereafter, the Court heard testimony from Receiver Wayne Geisser, IRS revenue agent Marvena Lewis, and Mr. Baker.

The Receiver adopted his first annual report, ECF No. 43-1, as his direct examination, without objection. Evid. Hr'g Tr. at 16:22-24. Through his report, the Receiver explained that

21

Baker Funeral Home, PC, had filed all, or almost all, of its quarterly tax returns and tax deposits on time while he was working with the business, id. at 46:15-21, 47:8-12, 66:4-7, but its 2014 Form 1120S was filed late, even after receiving an extension of the filing deadline, id. at 42:5-43:3. In addition, the Receiver highlighted Mr. and Mrs. Baker's various other areas of noncompliance with the IRC and noncooperation with him.

The Receiver, through his annual report, testified that Mr. and Mrs. Baker were "slow or non-compliant with . . . records production requests." Annual Rep. 4. The Receiver testified that he met with Mrs. Baker at the outset of the Receivership, Evid. Hr'g Tr. at 17:23-24, 19:12-14, and later met with Mr. and Mrs. Baker together and Mr. Baker individually, id. 17:21-23, 19:15-23. During these meetings, the Receiver explained to Mr. and Mrs. Baker that he needed at least one month of account statements for all of the funeral home's bank accounts to ascertain the business's cash flow. Id. at 20:14-17, 21:1-8. In addition, the Receiver asked for a list of funerals performed by the funeral home over certain time periods "to see the record of income on an ongoing basis." Id. at 23:24-24:6, 24:22-25:15. As to each of these requests, Mr. and Mrs. Baker promised to provide the Receiver with the information he needed. Id. at 24:7-12, 26:6-9. Despite following up a number of times through correspondence directed to both Mr. Baker and Mrs.

22

Baker, id. at 21:1-22:8, 23:17-23, 24:18-20, 26:6-24, 54:6-17, 69:1-11; Gov't Hr'g Ex. 2, the Receiver was never provided with the information requested, Evid. Hr'g Tr. at 20:20-23, 22:17-23, 27:3-10. The Receiver admits that he never asked Baker Funeral Home, PC's outside accountant, Frank Gallo, for these materials, id. at 55:24-56:21, but Mr. and Mrs. Baker never directed the Receiver to go to Mr. Gallo for the information, and the Receiver had no reason to believe the funeral home would not have these records in its possession, id. at 51:17-54:22.

These are just two examples of Mr. and Mrs. Baker's noncooperation with the Receiver. In sum, the Receiver testified that Mr. and Mrs. Baker failed to respond or took months to provide, or provided only portions of, the following materials requested by the Receiver: (1) a complete copy of Baker Funeral Home's QuickBooks; (2) verification of tax compliance; (3) a list of funerals and cremations performed in 2015; and (4) corporate bank statements. Annual Rep. at 4, 7, 9; Hagerman Decl. Ex. 3, ECF No. 51-6 (the Receiver's information requests dated November 17 and 20, 2015); id. Ex. 8, ECF No. 51-11 (the Receiver's information request dated July 24, 2015); Evid. Hr'g Tr. at 27:13-28:23.

Second, the Receiver, through his annual report, testified that Mr. and Mrs. Baker refused to cooperate in implementing adequate financial accounting systems and internal

controls at Baker Funeral Home, PC. Annual Rep. at 6. The
Receiver explained that, during meetings and telephone calls
with Mr. and Mrs. Baker, he counseled them about the importance
of developing sound day-to-day accounting practices through the
QuickBooks system. Evid. Hr'g Tr. at 28:6-29:12. He also advised
them of the importance of maintaining two separate business
accounts: one for all income and operating expenses and a
separate account exclusively for payroll. Id. at 71:25-72:22. In
response, Mr. and Mrs. Baker promised to try to implement the
Receiver's suggestions. Id. at 71:5-23. Unfortunately, they made
little effort to do so, and at the time that the Receiver
prepared his annual report, "the interface [between the internal
accounting procedures for funerals and] the accounting function
[remained] seriously lacking, principally because the QuickBooks
accounting function [wa]s not maintained [and] [wa]s detached
from banking records and because [the business] use[d] multiple
accounts to juggle funds to meet obligations." Annual Rep. at 6.
At the time of the Receiver's report, Mr. and Mrs. Baker were
"months behind" in entering financial transactions into
QuickBooks. Id.

The Receiver observed a number of troubling financial
practices, which Mr. and Mrs. Baker made little or no attempt to
correct, including Mr. and Mrs. Baker's failure to enter vendor
invoices into QuickBooks, perform monthly banking

24

reconciliation, create a system for recording and collecting outstanding accounts receivable, and maintain daily bank deposit receipts to verify the deposit of all received funds. Id. at 6-8. And the Receiver noted a number of anomalies in the funeral home's financial records, including the sudden absence of shareholder withdrawals or payroll records for Mr. and Mrs. Baker beginning in April 2015 (leading to questions as to how they pay their personal expenses), Hagerman Decl. Ex. 6, at 1-2, ECF No. 51-9 (the Receiver's April 23, 2015 Status Report); checks for personal expenses drawn against an account captioned "Operating Payroll and Marcia Baker," id. Ex. 7 at 4-6, ECF No. 51-10 (the Receiver's Site Visit Report dated September, 4, 2015); and failure to report the business's receipt of a $5,015 check, which Mr. Baker deemed a mere "oversight," id. at 5; Annual Rep. at 7.

The Receiver also testified to other uncooperative conduct by the Bakers. For instance, although Mr. Baker admitted that he was unsophisticated in the accounting arena and requested the Receiver's help on several occasions to get the books and records in line, Mr. Baker repeatedly cancelled meetings with the Receiver during which the two had planned to review accounting plans. Evid. Hr'g Tr. at 49:23-50:18. More egregiously, the Receiver learned that Mr. Baker had opened an additional Bank of America account for the business and had the

statements for that account mailed to his home, but the Receiver was never given copies of those statements, despite his requests beginning in August 2015. Annual Rep. at 7.

Finally, the Receiver testified concerning Baker Funeral Home, PC's failure to pay his fees, as required by the Consent Receivership Order. The Receiver billed Baker Funeral Home, PC, on a monthly basis, but Mr. and Mrs. Baker neither paid nor objected to the invoices for over a year. At the time of the Receiver's report, the funeral home owed him $23,328, Annual Rep. at 10; Hagerman Decl. Ex. 11, ECF No. 51-14, and that number has now increased due to the Receiver's costs in preparing for and attending hearings in connection with the Government's contempt motion, Evid. Hr'g Tr. at 14:5-21.

The Government's next and final witness at the evidentiary hearing was Marvena Lewis, an IRS revenue officer. Evid. Hr'g Tr. at 73:23-74:3. Ms. Lewis has been assigned to Baker Funeral Home, Ltd.'s and later Baker Funeral Home, PC's case since 2007 and is familiar with the IRS's collection activity related to those entities. Id. at 74:7-23. Ms. Lewis explained that IRS revenue agents are required to log the hours spent on collection activity associated with each taxpayer. Id. at 92:10-14. Her logs show she has spent roughly 60 hours on collection activity in connection with Baker Funeral Home, PC,

and approximately 370 hours in connection with Baker Funeral Home, Ltd. Id. at 92:19-93:2.

Ms. Lewis testified that although there are roughly two million dollars of outstanding tax liabilities in connection with Baker Funeral Home, Ltd., id. at 109:19-21, the IRS is not actively attempting to collect on those liabilities since Baker Funeral Home, Ltd., has no assets and cannot obtain any lines of credit. Id. at 89:7-19, 90:9-13.

Ms. Lewis testified to a chart she had prepared based on her review of the IRS account transcripts, which outlined Baker Funeral Home, PC's tax return filing status over the course of several recent tax periods. Gov't Hr'g Ex. 4; Evid. Hr'g Tr. 77:14-81:12. The following chart summarizes Baker Funeral Home, PC's tax return filings and their filing dates:

| Tax Type | Tax Period | Date Return Originally Due | Filing/Payment Status |
|---|---|---|---|
| Form 941 | 4th Quarter 2014 | January 31, 2015 | Filed May 11, 2015--over 3 months late |
| Form 941 | 4th Quarter 2015 | January 31, 2016 | Never filed |
| Form 941 | 1st Quarter 2016 | April 30, 2016 | Never filed; no payroll tax deposits made |
| Form 940 | 2014 | January 31, 2015 | Filed May 22, 2015--over 3 months late |
| Form 940 | 2015 | January 31, 2016 | Never filed |
| Form 1120S | 2014 | March 15, 2015 | Filed over one month late, after 6-month extension |
| Form 1120 | 2015 | March 15, 2016 | Not yet filed (extension until September 16, 2016) |

Gov't Hr'g Ex. 4; Evid. Hr'g Tr. 77:14-81:12. Ms. Lewis did not

provide an estimate as to Baker Funeral Home, PC's current

outstanding tax liabilities, due to the number of outstanding

returns. See Gov't Hr'g Ex. 4 at 1 (stating that the IRS

"[c]annot compute outstanding balance until taxpayer files the

return").

        Ms. Lewis stated that the IRS has not issued levies

against Baker Funeral Home, PC's corporate funds within the last

six months, although notices of levy have been issued to Mr. and

28

Mrs. Baker, jointly; Mr. Baker, individually; and Mrs. Baker, individually. See Gov't Hr'g Ex. 7; Evid. Hr'g Tr. at 86:15-87:2. These levies represent Mr. and Mrs. Baker's personal liabilities for civil penalties, specifically trust fund recovery penalties,[9] as well as individual income tax pursuant to Form 1040. Gov't Hr'g Ex. 7; Evid. Hr'g Tr. at 88:1-23, 105:9-106:20. Ms. Lewis testified that the IRS has recovered some funds to satisfy these liabilities through the levy process. Evid. Hr'g Tr. at 102:25-103:18. In response to a summons issued to Bank of America, Ms. Lewis learned that Mr. Baker had opened two new accounts with Bank of America under the name "Vince N Baker Sole Prop DBA Baker Funeral Home." Gov't Hr'g Exs. 5, 6; Evid. Hr'g Tr. 83:22-86:6.

---

[9]     The IRC requires employers to withhold income and social security taxes from the wages of their employees and to hold such taxes in trust for the United States. 26 U.S.C. §§ 3102, 3402, 7501. Section 6672 permits the United States to assess a trust fund recovery penalty against certain persons who fail to collect or turn over such funds to the IRS. Id. § 6672. Specifically, the statute provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Id. § 6672(a).

Finally, Mr. Baker testified in his own defense. Mr. Baker explained that he was the sole owner of Baker Funeral Home, Ltd., and now is an employee of Baker Funeral Home, PC, with no ownership interest in the new company. Evid. Hr'g Tr. at 111:7-14, 113:19-21, 115:8-13. He explained that Baker Funeral Home, PC, was created, upon the advice of Mr. Gallo, to overcome Baker Funeral Home, Ltd.'s liability to the IRS and inability to obtain new lines of credit. Id. at 115:14-23, 116:21-117:6.

As to compliance with the Court's prior orders, Mr. Baker admitted that the Receiver requested documents that were never provided to him. Id. at 129:25-130:4. He also did not contest that Baker Funeral Home, PC, filed late tax returns. Id. at 169:3-170:4. But Mr. Baker claimed the fault falls on Mrs. Baker. He testified that he believed that Mrs. Baker, as the sole owner and one-hundred percent shareholder of Baker Funeral Home, PC, was to serve as the Receiver's primary contact, id. at 128:18-129:1, and that it was her sole responsibility to see that the funeral home filed its tax returns and filed those returns on time, id. at 169:16-19. He explained that Mrs. Baker oversaw the finances and accounting for Baker Funeral Home, PC, until September 2015, when she left the business for other employment. Id. at 122:24-123:3, 130:5-19, 183:16-20, 185:3-5. Mr. Baker testified that he did not regularly review the funeral home's bank account statements or concern himself with the

30

filing of tax returns, as he believed this was Mrs. Baker's role. Id. at 126:17-127:4, 132:1-16, 163:9-13. And Mr. Gallo had explained to Mr. Baker that he could not take direction from Mr. Baker concerning the filing of federal tax returns, because Mr. Baker was not an owner or officer of Baker Funeral Home, PC. Id. at 163:23-164:6.

Mr. Baker admitted that Baker Funeral Home, PC, currently has four full-time employees and approximately four to six part-time employees and has had roughly the same number of employees since 2011. Id. at 123:11-124:19.

Mr. Baker testified that both he and Mrs. Baker were signatories on Baker Funeral Home, PC's payroll account, and both had access to the checkbook and ATM cards for that account. Id. at 131:3-132:25. Mr. Baker alleged that Mrs. Baker used her account access to take money from Baker Funeral Home, PC, without his knowledge or authority. Id. at 135:2-136:4. During his direct examination, Mr. Baker reviewed account statements for Baker Funeral Home, PC's payroll account for the period between February and September 2015 and highlighted all of the ATM withdrawals from that account using Mrs. Baker's ATM card, online account transfers to Mrs. Baker's personal bank account, and checks written against the account that Mr. Baker identified as Mrs. Baker's personal expenses. Id. at 133:23-147:19; V. Baker Hr'g Exs. 1-8. Such expenses included payment for a trip

31

to Turks and Caicos, payment for Mrs. Baker's personal Mercedes Benz vehicle, and significant cash withdrawals. V. Baker Hr'g Ex. 2, at 5 (wire transfer for condo in Turks and Caicos); V. Baker Hr'g Ex. 8 (check issued to Mercedes Benz dealership); V. Baker Hr'g Ex. 6, at 3 ($1300 cash withdrawal). Mr. Baker claimed that he did not authorize such conversion by Mrs. Baker and was surprised to learn of these transactions. See, e.g., Evid. Hr'g Tr. at 136:2-4, 139:15-17, 143:3-12, 145:19-20.

Mr. Baker, however, never told anyone (besides customer service representatives at the Chestnut Hill branch of Bank of America), and specifically did not tell the Receiver, about the alleged conversion by Mrs. Baker. Id. at 171:22-172:5. And bank records show that Mr. Baker also used the payroll accounts for personal--or, at the very least, non-payroll-- expenses. See, e.g., V. Baker Hr'g Ex. 2, at 5 (Capital Grille steakhouse); V. Baker Hr'g Ex. 4, at 4 (Philadelphia 76ers tickets and Gaylord National Harbor Hotel charges); V. Baker Hr'g Ex. 6, at 4 (Regal Cinemas movie tickets); V. Baker Hr'g Ex. 10, at 3 (Rolling Green Golf Club charges).

Mr. Baker testified that he tried to circumvent Mrs. Baker's access to the funeral home's funds by closing Baker Funeral Home, PC's bank accounts accessible to her and opening new accounts under the name "Vince N Baker Sole Prop DBA Baker Funeral Home," Evid. Hr'g Tr. at 174:1-11, 176:8-13, 185:15-25,

although he could not explain how he had authority to do so as a mere employee of Baker Funeral Home, PC, id. at 186:15-187:9. Mr. Baker admitted that Mrs. Baker currently does not have access to the new accounts (or to any of Baker Funeral Home, PC's funds, which are now held in the new accounts), id. at 185:22-186:8, 191:11-22, and is employed full-time at another company, id. at 185:3-10. He also admitted that Mrs. Baker attempted to relinquish her shares in Baker Funeral Home, PC, to Mr. Baker, but he has not agreed to the transaction. Id. at 193:17-195:9.

Following the evidentiary hearing, the Court issued a pendente lite order inviting the parties to make further submissions in support of or opposition to the Government's contempt motion. ECF No. 74. In addition, the Court found that "(1) Vince Baker and Marcia Baker have comingled corporate funds of Baker Funeral Home, Ltd., and Baker Funeral Home, PC, with their own personal funds; (2) unless they are restrained, assets as to which the Internal Revenue Service has asserted claims for taxes due and owing may be dissipated; and (3) an order is warranted to maintain the status quo of the affairs at Baker Funeral Home, Ltd., and Baker Funeral Home, PC, until the Court issues its ruling on the Government's Third Motion for Contempt, and therefore ordered that

> Vince Baker and Marcia Baker, in their individual capacities, and Baker Funeral Home, Ltd., and Baker Funeral Home, PC, by their shareholders, principals, agents, or employees, and all attorneys, agents, and employees, and anyone else acting on behalf of those individuals or entities, and all persons or entities have knowledge of this Order, shall not, directly or indirectly transfer, sell, assign, pledge, hypothecate, encumber, dissipate, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, dissipated, disposed of in any manner; or take, or cause to be taken, any action that would have the effects of depreciating, damaging, or in any way diminishing the value of any assets, including real property and personal property, other than in the ordinary course of business, belonging to Vince Baker; Marcia Baker; Baker Funeral Home, Ltd.; and Baker Funeral Home, PC, until further Order of the Court.

Id. Following the pendente lite order, each of the parties submitted supplemental briefs. ECF Nos. 76, 77, 78, 81. Accordingly, the Government's Third Motion for Contempt is now ripe for disposition.

## II.   CONCLUSIONS OF LAW

In its third motion for contempt, the Government moves to hold Mr. and Mrs. Baker as well as both Baker Funeral Home business entities in civil contempt for disobeying the Amended Permanent Injunction Order and the Consent Receivership Order. ECF No. 51. The Government further requests that the Court modify the scope of the current injunction in this case to (1) direct the Receiver to commence an orderly winding down of the business of Baker Funeral Home, Ltd., and Baker Funeral Home,

PC; (2) enjoin Mr. and Mrs. Baker from owning, controlling, managing, consulting for, or serving as an officer of any funeral home or cremation business for ten years, or until such time as they show they are capable of complying with the IRC; and (3) compel Defendants to pay the past-due balance of $23,328 owed to the Receiver and $4,480 in past-due attorneys' fees owed to the Government, as well as the Government's attorneys' fees in connection with the instant motion practice. ECF No. 51-1 at 1; ECF No. 77 at 4-5. The Court will first address whether Mr. and Mrs. Baker and Baker Funeral Home, PC, are in civil contempt of the Court's earlier orders, before determining, pursuant to 26 U.S.C. § 7402(a), whether broader injunctive relief is required to enforce the internal revenue laws.

A.   Civil Contempt

The Government suggests that "[t]here can be no serious dispute" that the Amended Permanent Injunction and Consent Receivership Order were valid orders and that Mr. and Mrs. Baker and the business entities knew about those orders. It therefore focuses on Mr. and Mrs. Baker and Baker Funeral Home, PC's conduct disobeying those Orders and highlights several areas of noncompliance detailed in the Receiver's annual report.

1.  <u>Legal Standard</u>

"Generally, contempt means disregard for, or disobedience of, the orders or commands of a public authority either legislative or judicial." <u>United States v. Juror No. One</u>, 866 F. Supp. 2d 442, 445 (E.D. Pa. 2011). A federal court has the power to punish contemnors by fine or imprisonment "at its discretion." 18 U.S.C. § 401; <u>Michaelson v. United States ex rel. Chi., St. Paul, Minneapolis & Omaha Ry. Co.</u>, 266 U.S. 42, 65 (1924) ("That the power to punish for contempts is inherent in all courts[] has been many times decided and may be regarded as settled law.").

Contempt proceedings may be either civil or criminal in nature. <u>Taberer v. Armstrong World Indus.</u>, 954 F.2d 888, 896-97 (3d Cir. 1992) (discussing <u>Shillitani v. United States</u>, 384 U.S. 364, 371 (1966)). "The dichotomy between criminal and civil contempt lies in the function of the order." <u>McDonald's Corp. v. Victory Inv.</u>, 727 F.2d 82, 86 (3d Cir. 1984). Here, the Government seeks civil contempt sanctions.

Civil contempt sanctions are remedial in nature and designed to coerce compliance with a court order or to compensate the injured party. <u>See</u> <u>Roe v. Operation Rescue</u>, 919 F.2d 857, 868 (3d Cir. 1990); <u>Latrobe Steel Co. v. United Steelworkers of Am.</u>, 545 F.2d 1336, 1343 (3d Cir. 1976). Even when civil sanctions coerce, they are designed to aid the

36

complainant through ensuring that the contemnor adheres to the court's order. Latrobe Steel Co., 545 F.2d at 1344. Conversely, criminal contempt is a punitive sanction, designed to vindicate the court's authority by punishing past acts of disobedience, which therefore cannot be cured by the contemnor. Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 635-36(1988).

A party seeking a civil contempt order must establish that "(1) a valid court order existed, (2) the [allegedly defiant individual] had knowledge of the order, and (3) [he or she] disobeyed the order." Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995). These elements must be proven by "clear and convincing" evidence, and ambiguities must be resolved in favor of the party charged with contempt. Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994). "The burden then shifts to the alleged contemnors to show why they were unable to comply with the order." F.T.C. v. Lane Labs-USA, Inc., No. 00-3174, 2011 WL 5828518, at *2 (D.N.J. Nov. 18, 2011) (citing FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999)).

The standard for contempt is not satisfied unless the evidence "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [a court] to come to a clear conviction

without hesitancy, of the truth of the precise facts." <u>United States v. Askari</u>, 222 F. App'x 115, 119 (3d Cir. 2007) (nonprecendential) (quoting <u>In re Jobes</u>, 529 A.2d 434, 441 (N.J. 1987)). Thus, "[a] contempt citation should not be granted if there is ground to doubt the wrongfulness of the [party's] conduct." <u>Harris</u>, 47 F.3d at 1326 (internal quotation marks omitted) (citing <u>Quinter v. Volkswagen of Am.</u>, 676 F.2d 969, 974 (3d Cir. 1982)). However, willfulness is not an element of contempt, nor does evidence of good faith bar a conclusion that a defendant acted in contempt. <u>Woods</u>, 28 F.3d at 399.

Civil contempt may be imposed against nonparties under certain circumstances. <u>Quinter</u>, 676 F.2d at 973. For instance, a nonparty may be held in contempt if she had "actual knowledge of [the] court's order and either abets the defendant or is legally identified with him." <u>Roe</u>, 919 F.2d at 871 (quoting <u>Quinter</u>, 676 F.2d at 972).

> 2.   <u>The Amended Permanent Injunction and Consent</u>
>      <u>Receivership Orders are Valid Orders as to Which</u>
>      <u>the Bakers Had Knowledge</u>

Here, the parties do not dispute that both orders addressed by Government's third contempt motion--the Amended Permanent Injunction and the Consent Receivership Order--are valid orders and that Mr. and Mrs. Baker had knowledge of both orders.

The Amended Permanent Injunction applied to "Baker
Ltd., Vince Baker and any successors, nominees, or alter egos of
Baker Ltd. or Vince Baker, or persons acting in concert with
them, specifically including Baker PC," and required those
individuals and entities to, among other things, "withhold and
pay over to the [IRS] all employment and unemployment taxes
required by law," ECF No. 33 at ¶ B; "timely make the federal
tax deposits of (1) Form 941 payroll taxes (income and FICA
taxes withheld from the employees' wages and the employer's
share of FICA taxes), and (2) Form 940 unemployment (FUTA) tax,
in an appropriate federal depository bank in accordance with
federal deposit regulations," id. at ¶ C; and "timely file all
federal employment (Form 941) and unemployment (Form 940) tax
returns and pay any balances due on those returns upon filing,"
id. at ¶ D. The Amended Permanent Injunction also barred the
named individuals and entities from "paying other creditors and
transferring, disbursing or assigning any money, property or
assets until the required federal tax deposits have been fully
made for the given tax period." Id. at ¶ E.

The Consent Receivership Order, which was reached by
agreement of the parties and signed by Vince Baker
"[i]ndividually and as officer of Baker Funeral Home PC" and
Marcia Baker as "[o]fficer of Baker Funeral Home PC," ECF No. 40
at 10, required Mr. and Mrs. Baker to "cooperate with the

39

Receiver" and "enjoined [them] from interfering in any manner
with the discharge of the Receiver's duties," id. at ¶ 16, which
included providing the Receiver with access to all of Baker
Funeral Home, PC's bank accounts and records, id. at ¶¶ 4(b), 6,
and permitting the Receiver to implement certain accounting and
control procedures to ensure accurate reporting to the IRS, id.
at ¶ 12. The Consent Receivership Order further required the
Bakers to file objections to or otherwise pay the Receiver's
invoices within thirty days of service to the invoice. Id. at
¶ 27(b). And, finally, the Bakers were to pay the Government's
attorneys' fees in connection with the earlier contempt motion
practice. Id. at ¶ 1.

It is therefore clear and uncontested that these
orders were unambiguous and required certain conduct by Mr.
Baker, Mrs. Baker, and Baker Funeral Home, PC. As such, the
Court finds that the Government has satisfied the first two
requirements of the civil contempt standard.

### 3.   Mr. and Mrs. Baker and Baker Funeral Home, PC, Failed to Comply with the Court's Prior Orders

Turning to the third and final element of the civil
contempt standard, the Government has established that the Mr.
and Mrs. Baker and Baker Funeral Home, PC, failed to comply with
both the Amended Permanent Injunction and the Consent
Receivership Order in at least four ways.

First, Mr. and Mrs. Baker and Baker Funeral Home, PC, violated the Amended Permanent Injunction by failing to timely file their Form 941, Form 940, and Form 1120 tax returns and make all payroll deposits. See Am. Permanent Injunction at ¶ C, ECF No. 33. Specifically, they filed the Form 941 for the fourth quarter of 2014 over three months late and have not filed any Form 941 for the fourth quarter of 2015 or the first quarter of 2016. Evid. Hr'g Tr. 77:14-80:14; Gov't Hr'g Ex. 4. Baker Funeral Home, PC's Form 940 for 2014 was filed roughly six months late, and its Form 940 for 2015 has not been filed to date. Evid. Hr'g Tr. 80:14-22; Gov't Hr'g Ex. 4. Finally, its Form 1120S for 2014 was filed over one month late, even after an extension of time to file, and the 1120S for 2015 has not been filed, although an extension was filed, Evid. Hr'g Tr. 80:23-81:12; Gov't Hr'g Ex. 4. The funeral home also failed to make timely interim payroll tax deposits for the first quarter of 2016. Evid. Hr'g Tr. 80:1-13; Gov't Hr'g Ex. 4.

Second, Mr. and Mrs. Baker and Baker Funeral Home, PC, violated the Receivership Order by repeatedly refusing to cooperate with the Receiver's valid requests for information. The Receivership Order provides that the Receiver "shall have access and control over Baker PC's records including, but not limited to, its journals, ledgers, bank statements, checkbooks, check registers, financial statements, invoices, receipts,

41

contracts, payroll records, tax returns and forms, and any electronically kept records such as those using QuickBooks." ECF No. 40 ¶ 6. It further directs that Baker Funeral Home, PC, "shall direct its accountant or any other agents of Baker PC with relevant information and documents to cooperate with the Receiver in furtherance of his duties." Id. ¶ 8.

The Receiver's annual report charges Mr. and Mrs. Baker with being "slow or non-compliant with . . . records production requests." Annual Rep. 4, ECF No. 43-1. Mr. and Mrs. Baker either failed to respond or took months to provide, or only provided fragments of, the following materials requested: (1) a complete copy of Baker Funeral Home's QuickBooks, (2) verification of tax compliance, (3) a list of funerals and cremations performed in 2015, and (4) corporate bank statements. Annual Rep. at 4, 7, 9; Hagerman Decl. Ex. 3, ECF No. 51-6 (the Receiver's information requests dated November 17 and 20, 2015); id. Ex. 8, ECF No. 51-11 (the Receiver's information request dated July 24, 2015). During the evidentiary hearing, the Receiver testified as to various requests for information he made to both Mr. and Mrs. Baker either during meetings with them, during phone conversations, or in written communications. Evid. Hr'g Tr. 17:21-18:10, 20:24-28:23. While Mr. and Mrs. Baker promised to provide him with the requested documents, they failed to fulfill many of those requests, despite the Receiver

42

repeatedly prompting them to do so. Id. at 20:14-23, 22:17-23, 28:1-5.

Third, the evidence shows that Mr. and Mrs. Baker refused to cooperate with the Receiver in implementing adequate financial accounting systems and internal controls at the funeral home. Annual Rep. at 10-11. The Receivership Order empowers the Receiver to "implement such accounting and control procedures necessary to ensure all revenue, including all cash receipts, of Baker PC are accounted and reported to the IRS." Consent Receivership Order ¶ 12, ECF No. 40. This provision, together with the requirement that Mr. and Mrs. Baker and Baker Funeral Home cooperate with the Receiver, id. ¶ 16, commanded those parties "to be at least reasonably diligent in following Mr. Geisser's guidance concerning the implementation of financial accounting systems and/or internal controls." Gov't's Br. at 11, ECF No. 51-1 (emphasis in original). Mr. Baker testified that he welcomed the Receiver's participation in this case and valued the advice that Receiver provided concerning best accounting practices. Evid. Hr'g Tr. at 167:15-19, 188:3-14. Mr. Baker even went so far so to claim that he has implemented certain of Receiver's recommendations, particularly those concerning streamlining the funeral home's bank accounts. Id. at 180:8-20. But the record shows otherwise.

In his Annual Report, the Receiver opined that "the interface [between the internal accounting procedures for funerals and] the accounting function [wa]s seriously lacking, principally because the QuickBooks accounting function [wa]s not maintained [and wa]s detached from banking records and because [the business] use[d] multiple accounts to juggle funds to meet obligations." Annual Rep. at 6. As of August 2015, Mr. and Mrs. Baker were "months behind" in entering financial transactions into QuickBooks. Id. The Receiver also observed a number of troubling practices, including Mr. and Mrs. Baker's repeated failure to enter vendor invoices into QuickBooks, perform monthly banking reconciliation, create a system for recording and collecting outstanding accounts receivable, and maintain daily bank deposit receipts to verify deposit of all received funds. Id. at 6-8.

Further, bank records introduced at the evidentiary hearing by Mr. Baker himself show that both Mr. and Mrs. Baker were using funds in the funeral home's payroll accounts for personal expenses. Mr. Baker accused Mrs. Baker of converting funds designated for payroll to pay for lavish personal expenses, Evid. Hr'g Tr. at 138:3-139:23, 142:1-147:19; V. Baker Hr'g Ex. 2, at 5 (wire transfer for condo in Turks and Caicos); V. Baker Hr'g Ex. 8 (check issued to Mercedes Benz dealership); V. Baker Hr'g Ex. 6, at 3 ($1300 cash withdrawal), but he

44

appears to have done the same thing, V. Baker Hr'g Ex. 2, at 5 (Capital Grille steakhouse); V. Baker Hr'g Ex. 4, at 4 (Philadelphia 76ers tickets and Gaylord National Harbor Hotel charges); V. Baker Hr'g Ex. 6, at 4 (Regal Cinema movie tickets); V. Baker Hr'g Ex. 10, at 3 (Rolling Green Golf Club charges). This activity on the part of both Mr. and Mrs. Baker violates the Consent Receivership Order's provisions concerning the implementation of accounting controls and, depending on the timing of the transfers, may even violate the Amended Permanent Injunction's prohibition against "paying other creditors and transferring, disbursing or assigning any money, property or assets until the required federal tax deposits have been fully made for the given tax period." ECF No. 33 ¶ E.

Fourth, and finally, Baker Funeral Home, PC, has failed to pay the Receiver's fees and the Government's attorneys' fees, as required by the Consent Receivership Order. As contemplated by the order, the Receiver elected to bill Baker Funeral Home on a monthly basis, but Mr. and Mrs. Baker neither paid nor objected to the invoices and now owe the Receiver at least $23,328. Annual Rep. at 10; Hagerman Decl. Ex. 11, ECF No. 51-14. The Bakers have also failed to pay the Court-ordered attorneys' fees associated with the Government's second contempt motion, which are now more than a year overdue. Hagerman Decl. Ex. 10, ECF No. 51-13.

45

Accordingly, the Court finds that the Government has demonstrated by clear and convincing evidence that Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, have failed to comply with the Amended Permanent Injunction and Consent Receivership Order.

***

Under the circumstances, the Court concludes that the Government has met its burden of establishing that Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, are in civil contempt of the Amended Permanent Injunction and Consent Receivership Order.

4.   <u>Defenses Raised by Mr. and Mrs. Baker and Baker Funeral Home, PC</u>

Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, now bear the burden of justifying their civil contempt and noncompliance with the Amended Permanent Injunction and Consent Receivership Order.

Mr. and Mrs. Baker appear to raise a series of justifications for their noncompliance, but these justifications can be broadly categorized in two ways: substantial compliance and impossibility. Both defenses, in some form, have been recognized in the Third Circuit. The Court will address each in turn.

a.   <u>Substantial Compliance</u>

As stated earlier, willfulness is not a necessary element of civil contempt. <u>Lane Labs</u>, 624 F.3d at 590 n.18. Accordingly, good faith is not a defense to <u>the elements</u> of civil contempt. <u>Id.</u> The Third Circuit, however, has recognized that a party charged with contempt may avail itself of the affirmative defense of substantial compliance. <u>Id.</u> at 591.

To establish the affirmative defense, "a party must show that it (1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" <u>Id.</u> Thus, the party must "introduce evidence beyond a mere assertion of inability" to comply with the order. <u>Harris</u>, 47 F.3d at 1324 (internal quotation marks omitted).

Here, Mr. and Mrs. Baker suggest that they are substantially compliant with the Court's prior orders, because (1) they have paid some of their tax obligations through levies on their bank accounts, and (2) they gave the Receiver everything he requested. Both defenses lack merit. The Court will address each argument in turn.

First, Mr. and Mrs. Baker contend that "to the best of [their] information and belief," the "IRS has received substantial payments through the levy process of approximately $20,000 from the accounts of Baker Funeral Home, PC . . . and

47

$20,000 from the personal accounts of Marcia Baker," and they therefore are "substantially compliant with the current court orders." Defs.' J. Resp. Gov't's 3d Mot. Contempt at 2-3, ECF No. 52. While the IRS did indeed issue notices of levy against Mr. and Mrs. Baker, jointly; Mr. Baker, individually; and Mrs. Baker, individually, as recently as March 1, 2016, Gov't Hr'g Ex. 7; Evid. Hr'g Tr. at 86:15-87:2, and recover some funds from Mr. and Mrs. Baker's accounts as a result, Evid. Hr'g Tr. at 102:25-103:18, the levies represent their personal liabilities for civil penalties, specifically trust fund recovery penalties, as well as individual income tax pursuant to Form 1040 for tax periods ending as far back as December 31, 2009. Gov't Hr'g Ex. 7. The levies therefore had nothing to do with Baker Funeral Home, PC's currently accruing tax liabilities. And the Bakers have failed to explain how the IRS's attainment of funds through the levies somehow renders them "substantially complaint" with the Amended Permanent Injunction, which required them to timely file quarterly and annual tax returns and make timely payroll tax deposits, and the Consent Receivership Order, which required them to cooperate with the Receiver, provide him with the information he requested, and implement his suggestions concerning accounting practices.

Second, at certain points during his testimony at the evidentiary hearing, Mr. Baker appeared to represent that he and

48

Mrs. Baker eventually provided the Receiver with all of the information he requested, albeit sometimes late. Evid. Hr'g Tr. at 130:2-4, 172:15-18. Mr. Baker also purported that he had implemented much of the Receiver's accounting advice, particularly that concerning streamlining the funeral home's bank accounts. Id. at 167:15-19, 180:8-20, 188:3-14. And Mr. Baker claimed that he admitted his lack of accounting knowledge and experience to the Receiver and asked for help, but the Receiver never provided him with the level of assistance he needed. Id. at 188:3-18, 203:19-21. The Court finds that such testimony lacks credibility.

As a threshold matter, Mr. Baker's contentions that, on the one hand, the Receiver provided him with accounting advice and he implemented that advice, and, on the other hand, that he requested guidance from the Receiver and got very little or none, are inconsistent.

What is more, Mr. Baker has made a number of concessions in connection with the Government's contempt motion that conflict with his testimony. In his response to the Government's motion, Mr. Baker "concede[d] that [Defendants] failed to provide the Receiver all requested documentation," although he attributes this failure to "neglect" and "not an attempt to hide anything from the Receiver." ECF No. 65 at 3. And Mr. Baker acknowledged at the evidentiary hearing that he

was "negligent," possibly even "gross[ly] negligen[t]," and "should have done more." Evid. Hr'g Tr. at 204:19-20 (Mr. Joseph: "Was he negligent? Yes. Was -- should he have done more? Yes."); id. at 207:1-5 (Mr. Joseph: "We [have] negligence, maybe even gross negligence on [Mr. and Mrs. Baker's] parts, but there's no malice on their part."). Finally, Mr. Baker, during questioning by his own counsel, admitted that the Receiver requested documents that were never provided to him. Id. at 129:25-126:4 ("Q. Do you agree that he asked for documents that he didn't get? A. Yes, he did request documents that he did not get upon the timely request that he asked for them.").

Such admissions are fatal to any claim of substantial compliance. Mr. Baker has not "taken all reasonable steps to comply" with the Court's orders, and Mr. and Mrs. Baker's failure to file timely tax returns, timely respond to the Receiver's information requests, or implement sound accounting practices are not "merely 'technical' or 'inadvertent' violations" of the Court's prior orders. Lane Labs, 624 F.3d at 591. Because Defendants have not satisfied their burden of showing that they have been "substantially complaint" with the Court's prior orders, the Court will reject this defense.

b.   Impossibility

Mr. and Mrs. Baker also assert the defense of
impossibility. "Where compliance is impossible, neither the
moving party nor the court has any reason to proceed with the
civil contempt action." United States v. Rylander, 460 U.S. 752,
757 (1983). As such, a contemnor may assert a present inability
to comply with the order in question as a defense in a civil
contempt proceeding. Id. In raising the defense of
impossibility, the contemnor has the burden of production. Id.
To meet this burden, the contemnor "must show 'categorically and
in detail' why he is unable to comply." Loftus v. Se. Pa.
Transp. Auth., 8 F. Supp. 2d 464, 468-69 (E.D. Pa. 1998)
(quoting O'Leary v. Moyer's Landfill, Inc., 536 F. Supp. 218
(E.D. Pa. 1982)). A party may not, however, rely on
impossibility if the condition making compliance unfeasible is a
condition of the party's own making. Berne Corp. v. Gov't of The
Virgin Islands, 570 F.3d 130, 140 (3d Cir. 2009). And where a
party claims that he lacks the financial ability to comply with
a court order, unless he is completely impoverished, he must
comply to the extent that his finances permit. Loftus, 8 F.
Supp. 2d at 469.

Here, Mr. and Mrs. Baker raise three possible
variations of an impossibility defense. The Court will address
each below.

51

    i. <u>Mrs. Baker's Attempts to Relinquish</u>
      <u>Ownership of Baker Funeral Home, PC</u>

   First, Mrs. Baker claims that she cannot be held in contempt because she has taken steps to relinquish ownership of Baker Funeral Home, PC, and no longer has access to the funeral home's records and bank accounts. <u>See generally</u> Marcia Baker's Resp., ECF No. 70; Marcia Baker's Add'l Resp., ECF No. 78.

   Initially, Mrs. Baker argued that she is "not a party to these proceedings or to any of the consent orders and therefore this court has no authority to order sanctions against her." Defs.' J. Resp. Gov't's 3d Mot. Contempt at 3, ECF No. 52. In connection with this argument, she noted that she executed the Consent Order solely in her capacity as an officer of Baker Funeral Home, PC, and not in her individual capacity. <u>Id.</u> at 2.

   Mrs. Baker cannot defeat the Government's motion for contempt based on her non-party status, because she signed the Consent Receivership Order, which expressly requires her to undertake certain duties. ECF No. 40 ¶¶ 5, 9, 11, 16-18. Specifically, the order states that "Baker PC, Vince Baker, <u>Marcia Baker</u> and any other officers, shareholder, employees, contractors or other agents of Baker PC shall cooperate with the Receiver and shall be enjoined from interfering in any manner with the discharge of the Receiver's duties and exercising his authorities set forth in this Order." <u>Id.</u> ¶ 16 (emphasis added).

She clearly had actual knowledge of the order after signing it,
and, as the sole owner of Baker Funeral Home, PC, is legally
identified with the business entity. See Roe, 919 F.2d at 871
(stating knowledge requirement). Moreover, the record shows that
Mrs. Baker was the Receiver's primary contact at the funeral
home, and he directed many of his information requests to her.
Evid. Hr'g Tr. at 17:23-24, 19:12-14. Accordingly, the fact that
Mrs. Baker was never formally named as a defendant in this case
is of no consequence.

Later in the contempt proceedings, Mrs. Baker seemed
to change her position. She argued that she cannot be sanctioned
or enjoined from certain conduct going forward, because, after
Mr. Baker accused her of conversion at some point in 2015, she
began removing herself from Baker Funeral Home, PC, and "has
[now] completely relinquished any relationship with Baker
Funeral Home." Marcia Baker's Add'l Resp. at 2, ECF No. 78.
Specifically, she points to Mr. Baker's testimony that she has
not worked at the funeral home since September 2015 and is now
employed at a construction company. Id. Further, she notes that
Mr. Baker recently transferred all of the funds out of the Baker
Funeral Home, PC, bank accounts to which she had access into
accounts bearing the name "Vince N Baker Sole Prop DBA Baker
Funeral Home" to which she has no access. Id. She contends that
"[w]ithout any access to Baker Funeral Home, P.C.'s current

53

funds, [she] cannot cause Baker Funeral Home, P.C. to pay taxes
to the Internal Revenue Service, attorneys' fees to the
Department of Justice, or fees to the Receiver and thereby
comply with the Court's Injunction and Receivership Order." <u>Id.</u>
In addition, she argues that "Vince Baker confirmed that [she]
does not have access to the information necessary to file [Baker
Funeral Home, PC's] tax returns." <u>Id.</u> at 3. Finally, during the
evidentiary hearing, counsel for Mrs. Baker represented that
Mrs. Baker has attempted to transfer her shares in Baker Funeral
Home, PC, to Mr. Baker, but he has refused to accept her offer.
Evid. Hr'g Tr. at 193:17-195:9.

The Court finds that Mrs. Baker has not met her burden
as to impossibility. While Mrs. Baker has apparently taken a
number of steps to resign from her role as officer of Baker
Funeral Home, PC, and dispose of her shares in the company, she
has failed to take certain critical steps: Mrs. Baker has not
provided any evidence that she has actually relinquished her
shares in Baker Funeral Home, PC, or otherwise made efforts
dissolve and wind down the company.[10]

Although the Court is perplexed as to how Mr. Baker,
as a mere employee of Baker Funeral Home, PC, was able to

---

[10]    Because the parties have not introduced the articles
of incorporation, bylaws, or other foundational corporate
documents for Baker Funeral Home, PC, the Court cannot comment
as to how Mrs. Baker might have gone about dissolving the
corporation or winding down its affairs.

transfer corporate funds being held in corporate accounts into new bank accounts accessible only to him, it seems clear that Mrs. Baker should be able to access and take control of the funds in those new accounts if she were to furnish the bank with corporate documents proving that she is the sole owner and officer of Baker Funeral Home, PC, and that Mr. Baker wrongfully and without authorization transferred the funds. Moreover, Mrs. Baker seems to suggest that Mr. Baker is somehow at fault for refusing to accept her surrendering of the shares of Baker Funeral Home, PC, see, e.g., Evid. Hr'g Tr. at 193:17-195:9, but she fails to point to any authority requiring him to do so.

Finally, to the extent that Mrs. Baker claims that Mr. Baker started accusing her of conversion and she began plotting her exit from the Baker Funeral Home Business in mid-2015, while the Receivership remained in place, the Court questions why Mrs. Baker never disclosed these problems to the Receiver, or to the Court, and never asked for assistance in departing from Baker Funeral Home, PC, in a manner that would not violate the terms of the Court's prior orders. Instead, Mrs. Baker waited until the Government filed its third contempt motion to raise these issues for the first time.

Because Mrs. Baker has not established that she has relinquished her legal interests in Baker Funeral Home, PC, or that she otherwise lacks capacity to influence its finances or

access its records, the Court will reject Mrs. Baker's

impossibility defense.

ii.   IRS Collection Efforts

Mr. and Mrs. Baker next argue that the IRS has levied

upon Mrs. Baker's "corporate and personal funds," which "made it

impossible to either pay employment taxes or the outstanding

invoices of the receiver." Defs.' J. Resp. Gov't's 3d Mot.

Contempt at 4, ECF No. 52. Thus, they claim that the IRS's

efforts to collect prior tax liabilities have impaired their

ability to comply with the current tax payment periods covered

by the Amended Permanent Injunction--a practice that they claim

the IRS itself discourages. Id. (citing I.R.S. G.C.M. 200133042

(Aug. 17, 2001)). According to Defendants, the Consent

Receivership Order should have included a provision barring the

IRS from engaging in personal and corporate tax assessment

against Baker Funeral Home, PC, and Mr. and Mrs. Baker

individually for the duration of the Receivership, such that

Baker Funeral Home, PC, could use its current cash flow to meet

current tax liabilities. Id.

As the Government notes in its reply brief, Mr. and

Mrs. Baker do not provide any detailed evidence as to the IRS

collection activity, including when this activity occurred, what

assets were seized, or why any particular levy prevented Baker

Funeral Home, PC, from paying its current tax obligations.
Gov't's Reply at 4 & n.2, ECF No. 59. In particular, they fail
to explain why levies on Mrs. Baker's <u>personal</u> funds prevented
Baker Funeral Home, PC, from paying employment taxes out of
<u>corporate</u> accounts. <u>Id.</u> at 4-5. To the extent that the bank may
have inadvertently confused corporate funds with Mr. and Mrs.
Baker's personal funds and turned those funds over to the IRS
(which has not been established by Mr. and Mrs. Baker here),
such a mistake is likely attributable to Mr. and Mrs. Baker's
practice of comingling corporate and personal funds and thus
caused by their own doing. <u>See</u> <u>Berne Corp.</u>, 570 F.3d at 140
(explaining that a party's impossibility defense fails if the
condition making compliance impossible was brought about by the
party's own doing). Mr. and Mrs. Baker also fail to explain how
the imposition of IRS levies somehow prevented them from
cooperating with the Receiver's information requests and
instructions that the funeral home implement certain accounting
practices. As such, the Court finds that this iteration of an
impossibility defense lacks merit.

### iii. <u>Mrs. Baker's Conversion</u>

Finally, Mr. Baker submits that Mrs. Baker's
conversion of corporate funds for her personal use throughout
2015 made it impossible to comply with Baker Funeral Home, PC's

tax obligations. Defs. Baker Funeral Home, Ltd. and Vince
Baker's Suppl. Resp. at 2, ECF No. 65. During the evidentiary
hearing, Mr. Baker reviewed account statements for the period of
time between February to September 2015 for Baker Funeral Home,
PC's payroll account and pointed to instances in which Mrs.
Baker, without his knowledge, purportedly used funds from that
account to satisfy her personal expenses. Evid. Hr'g Tr. at
133:23-147:19; see also, e.g., V. Baker Hr'g Ex. 2, at 5 (wire
transfer for condo in Turks and Caicos); V. Baker Hr'g Ex. 8
(check issued to Mercedes Benz dealership); V. Baker Hr'g Ex. 6
($1300 cash withdrawal). However, Mr. Baker failed to explain
"categorically and in detail" why the particular sums of money
allegedly taken by Mrs. Baker rendered him wholly unable to make
payroll deposits and other federal tax payments, much less why
this apparent "conversion" should excuse his noncooperation with
the Receiver and the funeral home's failure to file tax returns.
Loftus, 8 F. Supp. 2d at 468-69 (explaining that the contemnor
must explain "'categorically and in detail' why he is unable to
comply" to avail himself of an impossibility defense); see also
id. at 469 (finding that a party claiming financial inability to
pay must comply with a court order to the extent his finances
permit).

    Moreover, the Court rejects Mr. Baker's suggestion
that he is the victim of Mrs. Baker's fraudulent scheme. Mr.

Baker claimed he was surprised to learn of the conversion, but Mrs. Baker was able to continue taking corporate funds because Mr. Baker neglected to monitor the funeral home's finances: he never reviewed corporate bank account statements, implemented accounting practices and controls that would have flagged Mrs. Baker's transactions, or otherwise discussed the funeral home's finances with his wife. Worse yet, it appears that Mr. Baker himself was also converting corporate funds to pay for his personal dining and entertainment, among other luxuries. See, e.g., V. Baker Hr'g Ex. 2, at 5 (Capital Grille steakhouse); V. Baker Hr'g Ex. 4, at 4 (Philadelphia 76ers tickets and Gaylord National Harbor Hotel charges); V. Baker Hr'g Ex. 6, at 4 (Regal Cinema movie tickets); V. Baker Hr'g Ex. 10, at 3 (Rolling Green Golf Club charges).

Because Mr. Baker is at least partially responsible for the conversion of corporate funds, Berne Corp., 570 F.3d at 140, and because he has not explained with any sort of specificity why the conversion left him unable to meet other obligations under the Amended Permanent Injunction and Consent Receivership Order, the Court finds that Mr. Baker's impossibility defense fails.

* * *

Accordingly, for the reasons discussed above, the Court concludes that Mr. and Mrs. Baker and Baker Funeral Home,

59

PC, have not justified their noncompliance with the Court's prior orders.

    B.   <u>Expanding Scope of the Injunction</u>

       In parallel with its motion for civil contempt sanctions, the Government asks the Court to modify the scope of the injunction to wind down Baker Funeral Home, PC, and enjoin Mr. and Mrs. Baker from owning and operating a funeral home business for a term of ten years, or at least until they can demonstrate to the Court that they have the capacity to operate a funeral home business without violating the IRC.

      1.   <u>Legal Standard</u>

       Under Third Circuit case law, modification of an injunction "is proper if the original purposes of the injunction are not being fulfilled in any material respect." <u>United States v. Local 560 (I.B.T.)</u>, 974 F.2d 315, 331 (3d Cir. 1992) (quoting 11 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2781 (1973)). The test for whether a new injunction is justified is "whether 'time and experience have demonstrated' that 'the decree has failed to accomplish' its objectives." <u>Id.</u> at 332 (quoting <u>United States v. United Shoe Mach. Corp.</u>, 391 U.S. 244, 249 (1968)).

       The Government points to 26 U.S.C. § 7402 as the basis for the Court's authority to expand the injunction. Section 7402

grants district courts jurisdiction "to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Section 7402(a) "was intended to provide the district courts with a full range of powerful tools to ensure the enforcement of both the spirit and the letter of the internal revenue laws." United States v. Raymond, 78 F. Supp. 2d 856, 877 (E.D. Wis. 1999). The statute "has been construed broadly, to allow courts the full panoply of remedies necessary to effectuate the enforcement of federal tax laws." United States v. Bartle, No. IP01-0768, 2002 WL 75437, at *4 (S.D. Ind. Jan. 16, 2002).

Under section 7402(a), the court must analyze the necessity and propriety of the injunctive relief "in light of the public interest involved." United States v. First Nat'l City Bank, 379 U.S. 378, 383 (1965). "'Courts of equity may, and frequently do, go much farther . . . to give . . . relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Id. (quoting Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937)). Although the Third Circuit has not set a standard for issuing or modifying an injunction under section 7402(a), other

courts have suggested factors that help to guide the Court's analysis.

In United States v. ITS Financial, LLC, the Sixth Circuit approved the use of the standard applied by the district court in issuing an injunction under section 7402(a). 592 F. App'x 387, 400 (6th Cir. 2014). The standard applied in that case was whether the Defendants were "reasonably likely to violate the federal tax laws again." Id. To predict the probability of future violations, the court assessed "the totality of the circumstances surrounding the defendant and his violations," including

> (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and the defendant's degree of scienter, (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve the defendant in such transaction; (4) the defendant's recognition of his or her own culpability; and (5) the sincerity of the defendant's

Id.

The Court finds that the standard applied in ITS Financial is appropriate to use here, because it is broad, emphasizes all of the circumstances, and takes into consideration multiple factors not directly related to the violations themselves. This standard affords the Court an opportunity to consider Mr. and Mrs. Baker's tax-related misconduct, their credibility, and the nature of their funeral

62

home business to determine the likelihood of the misconduct's recurrence.

### 2. Likelihood of Future Compliance with Federal Tax Obligations

In light of the circumstances of this case and faced with the task of assessing Mr. and Mrs. Baker's likelihood of future compliance with the IRC, the court is reminded of the phrase from Shakespeare's The Tempest: "What's past is prologue." William Shakespeare, The Tempest act 2, sc. 1. The Court's assessment is heavily informed by Mr. and Mrs. Baker and their business's history of noncompliance with the tax code--a history that spans two decades, since the time that Mr. Baker inherited the funeral home business after his father's passing. As such, the Court incorporates its discussion concerning the contempt portion of these proceedings here.

The history of this litigation suggests that Mr. and Mrs. Baker have made a habit of paying lip service to IRS authorities, the Receiver, and even the Court, promising that they will finally put forward their best efforts to become compliance with the tax code. But this never happens.

Despite promises to become compliant with federal tax obligations, extensive judicial supervision over the course of this case, and the appointment of the Receiver over one year ago, Mr. and Mrs. Baker have continued to file late returns,

failed to make all federal tax deposits on behalf of Baker Funeral Home, PC, and otherwise flouted numerous aspects of the IRC and prior Court orders. In addition, they have shown a willingness to create new "shell" business entities and open new bank accounts to shuffle corporate funds.

Through the Receivership and otherwise, Mr. and Mrs. Baker and their business have been afforded close supervision and support and a number of chances to rectify their past mistakes. Instead of seizing these opportunities and welcoming the assistance provided to them, Mr. and Mrs. Baker have refused to cooperate with the Receiver and others, such as Mr. Gallo, who have tried to help them straighten out their finances and become current with their federal tax liabilities.

The IRS cannot state with any confidence the amount of taxes currently owed by Baker Funeral Home, PC, due to the degree of financial mismanagement of the business. See, e.g., Gov't Hr'g Ex. 4 (stating that the IRS "[c]annot compute [the] outstanding balance [for a given tax period] until [the] taxpayer files the return"). It is sufficient to say that Ms. Lewis estimates that the currently outstanding tax liabilities of Baker Funeral Home, Ltd., alone, total roughly two million dollars. Evid. Hr'g Tr. at 109:19-21.

Further evidence of the mismanagement of the funeral home business is Mr. Baker's admission that over the past

64

fifteen years, he has never filed any reports concerning prepaid

contracts for funeral expenses, as required by 49 Pa. Code

§ 13.224(c), instead believing, without ever confirming, that

the insurance company with which the funeral home worked would

file the required reports on behalf of the business.[11] Vince

---

[11]     The Pennsylvania law on prepaid burial contracts
provides as follows:

> (a)  A funeral director shall deposit in escrow or
> transfer in trust to a banking institution in this
> Commonwealth, the entire amount of monies received by
> the funeral director under a prepaid contract for
> funeral services or merchandise, including additional
> service fees or arrangement fees.
>
> (b)  In regard to prepaid contracts entered into by
> funeral directors after November 4, 1989, a funeral
> director shall file a report with the Board within 90
> days containing the information specified in
> subsection (c) with respect to each prepaid contract
> for funeral services and merchandise. Forms for the
> reports, including the report required under
> subsection (d), will be provided by the Board.
>
> (c)  A funeral director shall file a report with the
> Board on a form provided by the Board, certifying as
> true and correct, the following information with
> respect to each prepaid contract for funeral services
> and merchandise entered into:
>
>> (1)  The date of the prepaid contract and the
>> name and address of the purchasers under the
>> contract.
>>
>> (2)  The name and address of the banking
>> institution in which 100% of the money received
>> by the funeral director on account of the
>> contract       has       been       deposited.
>>
>> (3)  The account number, account registration
>> title—name and persons for whom the account is

Baker Dep. 41:5-47:13, May 26, 2016, ECF No. 72-1. In addition, the status of funds associated with prepaid burial contracts is somewhat uncertain. <u>Compare</u> Annual Rep. at 8 (noting that "Mr. Baker indicated that there were . . . a few pre-paid funeral[s] for which separate bank accounts were maintained," but that he "was unable to provide a list of pre-need funerals and [the] location of associated funds"), <u>with</u> Evid. Hr'g Tr. at 165:21-167:8 (Mr. Baker's testimony outlining various locations of funds associated with prepaid burial contracts).

The Bakers that came before this Court refused to accept responsibility for the circumstances that got them and their funeral business where they are today and failed to show the Court that they are committed to doing better in the future. Instead, Mr. and Mrs. Baker pointed fingers at one another and at the Receiver. Mr. Baker accused his wife of fraudulent conversion of corporate assets. Mrs. Baker accused her husband

---

established—and the date the account was established.

(4) In installment contracts, if the entire amount of the contract has not been paid, the report must expressly indicate the fact that an installment contract is involved, and the total amount of installments received by the funeral director and deposited in escrow or in trust.

49 Pa. Code § 13.224(a)-(c).

of cutting her out of the business that she owns by transferring funds to new bank accounts and denying her access to company records. And both Mr. and Mrs. Baker seemed to blame the Receiver for not doing more for them (such as working more closely with the business's outside accountant, Mr. Gallo, or actually filing tax returns and making tax payments on behalf of the business), even though the circumstances suggested that Baker Funeral Home, PC, did not have the cash flow to pay the Receiver for more extensive services and the Bakers thwarted any efforts the Receiver made to become more involved.

The extent of Mr. and Mrs. Baker's noncooperation with the Receiver--and with each other--and the current state of affairs of Baker Funeral Home, PC's bank accounts and records, which can fairly be characterized as financial chaos, raises a question whether the company's tax reporting could ever be accurate going forward. As the Court explained at the evidentiary hearing, what is left is an employee (Mr. Baker) who is now directing the operations of the business, an owner (Mrs. Baker) who has bailed out of the business (Baker Funeral Home, PC), and a funeral home business that requires a certain minimum number of employees to operate but does not appear to have the cash flow to survive. Mr. and Mrs. Baker have failed to demonstrate to the Court that there is someone responsible,

willing, and able to manage the affairs of Baker Funeral Home, PC, going forward.

Mr. and Mrs. Baker concede that they are not sophisticated when it comes to the financial management of a business. But they have shown that they are unwilling to seek assistance from, or listen to guidance provided by, those with the accounting experience necessary to run a business that is compliant with federal tax law. The Court cannot ascertain whether the extent of confusion and commingling of Mr. and Mrs. Baker's personal and corporate assets is the result of their degree of financial ignorance or whether it is instead an intentional scheme to shield underreporting of the business's tax liabilities and avoid IRS collections. At the very least, the bank account records introduced show that both Mr. and Mrs. Baker prioritize maintaining a certain lifestyle--which includes taking Caribbean vacations, driving luxury cars, and dining at expensive restaurants--over paying off creditors and meeting their federal tax obligations.

Taking the totality of the circumstances into account, Mr. and Mrs. Baker have shown that they are not committed to paying federal taxes and seek to operate a business that is "above the law" (or at least perpetually remains in a state of financial chaos). The Court therefore finds that Mr. Baker; Mrs. Baker; Baker Funeral Home, Ltd.; and Baker Funeral Home, PC, are

unlikely to comply with federal tax laws going forward, and accordingly, the scope of the Amended Permanent Injunction must be expanded.

### III.   CONCLUSION

For the foregoing reasons, the Government's Third Motion for Contempt is granted, and the Court finds that Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, are in civil contempt of the Court's prior orders and are unlikely to comply with their federal tax obligations in the future. In a subsequent proceeding, the Court will determine the appropriate sanctions that should be imposed against Mr. Baker, Mrs. Baker, and Baker Funeral Home, PC, as well as the terms of the expanded injunction.

An appropriate order follows.